Brian M. Doherty
GILMORE & DOHERTY, P.C.
1029 West 3rd Ave., Suite 500
Anchorage, Alaska 99501-1982
Telephone: 279-4506
Facsimile: 279-4507

Attorneys for Defendant Jaret Reid

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:05-CR-003-JWS |
| ) | |
| JOSEPH R. JUNKER and ) | |
| JARET Z. REID, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## DEFENDANT JARET REID'S SENTENCING MEMORANDUM

I.    PROCEDURAL HISTORY

Jaret Z. Reid entered a guilty plea to Count 1 of the Indictment on November 7, 2005. Pursuant to the written plea agreement filed on October 18, 2005, the defendant entered a guilty plea to a single count of Conspiracy in violation of 21 U.S.C. §§ 846 and 841(a)(1), a Class C felony. The Government will dismiss Count 2 of the Indictment pursuant to the plea agreement at the time of sentencing. The case is set for sentencing on April 4, 2006, at 9:00 a.m. in the United States District Court for the

District of Alaska in Juneau before the Honorable John W. Sedwick, Chief U.S. District Court Judge. The defendant has not disagreement with the presentence report since all previous objections were resolved between defense counsel and Timothy Astle of the U.S. Probation/Pretrial Services Office. An evidentiary hearing is not requested.

II.     PERSONAL BACKGROUND OF THE DEFENDANT

Jaret Reid was born August 29, 1985, in Juneau, Alaska and is 20 years of age. Jaret Reid is the great-grandson of Lee Smith, who came to Juneau, Alaska in 1907. Lee Smith worked in the assay office of the Perseverance Mine for three years, and then bought a dairy. The Smith Dairy and original family homestead was located where Harborview School now stands in downtown Juneau. The defendant's mother, Kathleen Reid, is employed as the office manager at Tongass Regional Eye Clinic in Juneau, and his father is employed by the Juneau Fire Department.

The defendant graduated from Juneau-Douglas High School in June of 2004. The defendant lived in Juneau his entire life. He is not married and has no children. The defendant was a good student at Juneau-Douglas High School and was active in athletics including baseball, basketball, skiing, and snowboarding. As the defendant states in his personal statement to the Court:

> My great-grandfather settled in Juneau in the early 1900's and operated Smith Dairy Farm. My father's parents owned and operated Reid Air since the 1970's, with Bush floatplanes which went all over southeast Alaska. My mother and father, along with the rest of my family, provided a childhood as good as any. I got good grades in school and was always an avid athlete. At 14 years old, when I was legally allowed to have a paying job, I was employed by my grandfather, Sidney Smith, the owner of SJS Excavation Company, a small family-operated but very successful construction business. I never planned on going to college because the construction business has always

been my number one occupation. I can be outdoors, work with my hands, run heavy equipment. It is something I enjoy and am good at. I have always planned to have this be my career.

Despite an excellent family background, academic and athletic achievement and excellent work ethic, Jaret Reid started experimenting with drugs in high school. The experimentation led to frequent social use, and subsequently, drug sales and addiction, and ultimately the defendant's current legal situation of a incarceration on a federal conviction for Conspiracy to Distribute Oxycontin and Cocaine charges which will result in a permanent felony conviction.

On March 25, 2005, Reid successfully completed the 34-day residential chemical dependency treatment program at the Willamette Residential Treatment Program. Since completion of the treatment, Jaret has stopped using drugs and alcohol. He has been involved in interventions to assist friends in Juneau to enter residential treatment for drug and alcohol abuse.

In his personal statement, Jaret Reid accepts responsibility for his actions in which he states:

> I have taken all responsibility and ownership for my actions that caused the pain and embarrassment my family and I have gone through. The main thing for me to do is to keep positive and file this in my brain and in my heart as a lesson learned. The damage is done, if I could go back in time and take a different path, I would do anything.

The defendant has an excellent work ethic and employment history as demonstrated by the letter of reference from Mary Griggs, Secretary-Treasurer and Manager of SJS Excavation. Jaret was gainfully employed with SJS Excavation since

June 6, 2000. During his tenure, he was promoted from a minimum-wage position to a $20.00 per hour Heavy Equipment Operator. The letter of reference indicates:

> His promotions have been based on his excellent work ethic, reporting to work on time, ability to learn quickly, and apply what he has learned in the operation of machinery and problem-solving excavation issues, as well as work as a positive team member in situations where we are often under time constraints and the pressure was high. We have been deeply saddened by Jaret's incarceration because he is an excellent employee, he follows directions, goes the extra mile to learn new techniques and machinery operation on the job, and is a delight to work with. Replacements of this caliber are difficult to secure. He takes pride in ownership in his duties and we will gladly hire him again, upon his release from incarceration. (See letter dated November 21, 2005, from Mary Frances Griggs, Secretary-Treasurer of SJS, Inc.)

Despite his criminal involvement in the Conspiracy to Distribute Controlled Substances and substance abuse issues, Jaret Reid's extended family, the Juneau community, and his employer still fully support him as demonstrated by the letters to the Court for consideration at the sentencing. The basis of this strong family and community support is Reid's excellent work ethic, acceptance of responsibility for his actions, successful completion of a drug and alcohol chemical dependency program, and his maintenance of a sober and a substance-free lifestyle since completion of the treatment program.

### III.    CRIMINAL CONDUCT OF THE DEFENDANT

Pursuant to the plea agreement filed on October 18, 2005, the defendant agreed to plead guilty to Count 1 of the Indictment, which charged him with Conspiracy to Distribute Controlled Substances, and admits that he distributed 1600 milligrams of oxycontin and 25 grams of cocaine in furtherance of the conspiracy. The maximum

sentence the defendant could receive under the plea agreement was 18 months. The defendant reserved the right to argue for any sentence within the applicable statutory guidelines of 21 U.S.C. § 841(b)(1)(C).

In exchange for the defendant's plea, the United States agreed to dismiss Count 2 of the indictment, to recommend an adjustment for acceptance of responsibility, not to seek enhanced statutory penalties against the defendant, and not to bring any additional charges relating to the conduct charged as provided in the indictment (Plea Agreement, p. 2). The plea agreement also provided that the defendant agreed he will not seek any downward departures under U.S.S.G., however, this section of the plea agreement does not prohibit the defendant from arguing for the application of any downward guideline adjustments to the Court's sentence calculation or the application of the factors set forth in 18 U.S.C. § 3553(a). (Plea Agreement, p. 5).

The government also agreed in the plea agreement to recommend a three-level downward adjustment for acceptance of responsibility. It is also critical for the Court to note that the United States agreed as follows:

> C.   Based upon investigation of the nature and circumstances of the case, and the history and characteristics of the defendant, the United States does not believe it is appropriate to attempt to hold the defendant accountable for the approximate kilogram and one-half imported to Juneau on or about June 23rd, 2004, by Mr. Junker.  (Page 8 and 9 of Plea Agreement).

The plea agreement provides the defendant is eligible for a two-level reduction based upon the provisions of the U.S.S.G. § 2D1.1(b)(6) and (7) and 18 U.S.C. 3553(f). The Government agreed that such provision is conditioned on the defendant having not more than one criminal history point, and the defendant truthfully providing to

the Government all information and evidence the defendant has concerning the offense over part of the same course of conduct or of a common scheme or plan.

    IV.    UNITED STATES SENTENCING GUIDELINE CALCULATIONS

The defendant has accepted responsibility for the offense, pled guilty and entered into a written plea agreement in this case. The United States Sentencing Guidelines, as amended November 1, 2004, apply at the time of sentencing. Pursuant to the United States Supreme Court decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005), the sentencing guidelines are advisory only and non-binding on this Court in imposing sentence in this case.

The United States Sentencing Commission guideline provision for a violation of 21 U.S.C. § 846 is set forth in U.S.S.G. § 2D1.1. The base offense level for the offense is calculated from the conversion chart set forth and the plea agreement agreed-upon quantity of the controlled substances of 1.6 grams of Oxycodone and 25.7 grams of cocaine. The result is a base offense level of 16.

The specific Offense Characteristics set forth in U.S.S.G. § 2D1.1(b)(6) and (7), and the criteria set forth in § U.S.S.G. 5C1.2(a)(1)-(5) regarding limitation of applicability of statutory minimum sentences in certain cases results in a 2 point reduction. The result is an adjusted offense level of 14.

There is an adjustment for acceptance of responsibility in that the defendant admitted his conduct and timely notified his intention to enter a plea of guilty pursuant to a negotiated plea agreement. It was agreed in the plea agreement that the defendant would be entitled to a three-point adjustment for acceptance of responsibility. The result is a Total Offense Level of 11.

The defendant has a criminal history category of I pursuant to U.S.S.G. Chapter 5, pt. A. The defendant has one conviction for misdemeanor Driving Under the Influence (DUI) in Juneau, Alaska. The date of arrest was January 15, 2005. The sentence was imposed on April 20th, 2005. The defendant received a sentence of 46 days with 40 suspended. It should be noted that the date of arrest was after the criminal conduct of the case before the Court which took place May 10th, 2004 through July 23rd, 2004. Reid committed the DUI prior to the defendant's successful completion of the residential treatment at Willamette Drug and Alcohol Chemical Dependency Program. The result is that the defendant has a criminal history category of I.

V.  SENTENCING OPTIONS PURSUANT TO THE U.S. SENTENCING GUIDELINES

Based on a total offense level of 11 and a criminal history category of I, the guideline imprisonment range is 8 to 14 months. It is critical for the Court to note that pursuant to U.S.S.G. § 5C1.1(d), if the minimum term of imprisonment in the applicable guideline range in the Sentencing Table is more than six months but not more than ten months, the minimum term may be satisfied by:

1. A sentence of imprisonment; or

2. A sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in U.S.S.G. § 5C1.1(e), provided that at least one-half the minimum term is satisfied by imprisonment.

The defendant has been incarcerated and in federal custody since November 7, 2005 at the Lemon Creek Correctional Center in Juneau, Alaska. In addition, the defendant served six days prior to his release on bail. Therefore, the

defendant will have served just over five months in custody of federal incarceration on the date of sentencing of April 4, 2006.

It is the defense recommendation that pursuant to the U.S. Sentencing Guidelines, the Court should impose a sentence of imprisonment of to eight months. Since at least one-half of the minimum term has been satisfied by imprisonment already served, the Court can release the defendant to serve to a term of supervised release with home detention. If the Court releases the defendant on home detention, defendant would reside at his parents' home in Juneau and be employed to work with SJS Construction to work six days per week for 12 hours per day to be monitored by the supervising probation officer while on supervised release. The defendant is a heavy equipment operator and construction worker with his previous employment position awaiting him upon his release from custody. The defendant's mother, father, and sister, and his extended family, continue to be extremely supportive of the defendant as demonstrated by the numerous letters of reference and support provided to the Court for consideration at the time of sentencing.

Therefore, it is respectfully requested that pursuant to the U.S. Sentencing Guidelines, the Court impose a sentence of eight months, however, pursuant to U.S.S.G. § 5C1.1(d) release the defendant at the time of sentencing to complete the remainder of the sentence of imprisonment through a term of supervised release to substitute home detention according to the schedule in § 5C1.1(e) since the defendant has already completed one-half of the minimum term through the five months of imprisonment at Lemon Creek Correctional Center while in federal custody awaiting sentencing.

The Court is required to place the defendant on supervised release if a term of imprisonment is imposed. The Court must impose a term of supervised release of at least three years pursuant to 21 U.S.C. § 841(b)(1)(C). In addition, 18 U.S.C. § 3583(d) requires mandatory conditions of supervised release prohibiting the defendant from committing any federal, state or local crimes, prohibiting the defendant from possessing an illegal controlled substance, prohibiting the defendant from any unlawful use of a controlled substance, and requiring the defendant to submit to a drug test within 15 days of the commencement of the term of supervised release and at least two periodic drug tests thereafter for the use of controlled substances.

The guideline fine range for an offense level of 11 is $2,000.00 to $20,000.00 pursuant to U.S.S.G. § 5E1.2(c)(3). It is requested that the Court impose a minimum fine in this case based on the fact that the defendant has successfully completed an in-patient drug and alcohol residential treatment program of 35 days, however, the defendant will be required to repay his parents for both the cost of the residential treatment program and legal defense fees incurred in this case.

VI.    THE APPLICATION OF THE UNITED STATES SENTENCING GUIDELINES ARE ADVISORY AND NON-BINDING IN IMPOSING AN APPROPRIATE SENTENCE IN THIS CASE.

Pursuant to the United States Supreme Court decision in <u>United States v. Booker</u>, 543 U.S. 220, and 125 S.Ct. 738 (2005), the sentencing guidelines are only advisory and non-binding on the Court in imposing an appropriate sentence in this case. The Court must consider the sentencing provisions set forth in 18 U.S.C. § 3553:

**Imposition of a sentence**

**(a) Factors to be considered in imposing a sentence.** – The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
  **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
  **(2)** the need for the sentence imposed—
    **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    **(B)** to afford adequate deterrence to criminal conduct;
    **(C)** to protect the public from further crimes of the defendant; and
    **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

There is no dispute that the nature and circumstances of the offense are very serious, however the defendant had a minor role in the overall conspiracy, and was not an organizer or leader in the conspiracy. In considering the history and characteristics of the defendant, it is obvious that Jaret Reid is not a typical drug offender coming before the Court. The history and personal characteristics of the defendant, the defendant's family history, and the defendant's work history all indicate that this criminal conviction is an aberration in the defendant's life.

The defendant comes before the Court as a youthful offender with no significant criminal record. The defendant has already successfully completed a 34-day in-patient drug and alcohol chemical dependency program. In his personal statement, Reid takes full responsibility for his actions and is cognizant of the fact that his

chemical dependency and addiction are life-long issues which require a lifetime of abstinence and control.

The other personal characteristics of Reid are that he is a hard-working individual with an excellent work ethic and has a career position awaiting him upon his release at SJS Construction. The defendant will be living in the family home with the full support of his nuclear and extended family to assist him in his rehabilitation and to again become a contributing member of society. It is a rarity in the federal court that a defendant with the personal characteristics and attributes of Jaret Reid with such significant family and community support is before the Court for sentencing as a drug offender. It is significant that despite his criminal conviction, circumstances of the offense of selling drugs, the defendant's addiction to drugs, and incarceration, that he nonetheless has the full support of his extended family and the community of Juneau. It is apparent that based on the defendant's history and characteristics that people are confident that Jaret Reid will return to the community and once again be a hard-working, contributing member of society by continuing working at SJS Construction, and will be able to maintain sobriety and a drug-free existence.

Pursuant to 18 U.S.C. § 3553(a)(1), although the nature and circumstances of the offense are very serious involving Conspiracy to Distribute Oxycontin and Cocaine, nonetheless the history and characteristics of the defendant are so outstanding, that the Court should impose a minimum sentence of eight months and take into consideration the extraordinary potential for rehabilitation based on the history and characteristics of the defendant.

Pursuant to 18 U.S.C. § 3553 (2) a total sentence of eight months with credit for time served of five months and three months of home detention is sufficient to satisfy the statutory requirements and to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, provide adequate deterrence to criminal conduct and protect the public from further crimes of the defendant. The defendant is not in need of further educational/vocational training, medical care or other professional treatment other than continue with drug and alcohol counseling as recommended by his substance abuse counselors.

Therefore, pursuant to United States v. Booker, and the factors to be considered in imposing a sentence pursuant to U.S.C. §3553 (a) (1) and (2) the Court should impose no further period of incarceration, provide credit for time served and give the defendant the opportunity to complete the remaining portion of his sentence through home detention with the opportunity to continue to work at SJS Construction and live at his parents' home in Juneau.  The Court should impose the standard conditions of supervised release for a drug defendant.

## VI.   CONCLUSION

Based on the United States Sentencing Guidelines and the provisions of 18 U.S.C. § 3553, the Court should impose a total sentence of eight months comprised of five months of actual incarceration and three months of supervised release, and permit the defendant to live at the family home as home detention and to work six days a week for SJS Construction. The Court should impose the standard conditions of supervised release and impose a minimum fine of $2,000.00 with mandatory drug testing.

DATED this 28th day of March, 2006, at Anchorage, Alaska.

                      GILMORE & DOHERTY, P.C.
                      Counsel for Defendant
                      Jaret Z. Reid

                      /s/_____
                      Brian M. Doherty
                      1029 W. 3rd Ave., Suite 500
                      Anchorage, AK 99501
                      Phone: (907) 279-4506
                      Fax: (907) 279-4507
                      E-mail: bdoherty@gilmoreanddoherty.com
                      Alaska Bar No. 8409077

<u>CERTIFICATE OF SERVICE</u>
I HEREBY CERTIFY that on this
28th day of March, 2006,
a true and correct copy of the foregoing
was delivered electronically
and via U.S. mail to:

Chief Judge John W. Sedwick
United States District Court
222 W. 7th Avenue, #32
Anchorage, Alaska 99513-7591

Tim Astle
United States Probation
Pretrial Services Office
222 W. 7th Ave., #48 Room 168
Anchorage, AK 99513-7562

Frank Russo
Assistant U.S. Attorney
Federal Bldg. U.S. Courthouse
222 West 7th Ave., #9, Room 253
Anchorage, AK 99513-7567

   GILMORE & DOHERTY

/s/ Brian M. Doherty_____
F:\Reid\SentMemo.doc

13